**INLAND STEEL COMPANY, Appellant,**

**v.**

**J. Franklin BURKE, Appellee.**

Court of Appeals of Kentucky.

March 29, 1971.

Rehearing Denied June 18, 1971.

Harry C. Campbell, Pikeville, for appellant.

Francis Burke, Pikeville, for appellee.

REED, Judge.

In 1943, the appellant, Inland Steel Company, employed the appellee, J. Franklin Burke, as an office clerk and bookkeeper. In January 1966, Inland sold the business in which Burke was employed to Island Creek Coal Company. All employees in the operation were terminated in an employment status with Inland as of the time of the sale, and Burke was immediately employed by Island Creek in the same capacity he had occupied with Inland. He actively worked for Island Creek until July 15, 1966, when he became ill. Subsequent physical examination revealed that he was suffering from arteriosclerotic heart disease, angina pectoris, and asymptomatic Parkinsonism. Burke claimed that he was entitled to severance pay from Inland and a monthly disability pension that was provided in a pension plan for employees of Inland. Burke also claimed the right to convert some group insurance policies in which he had acquired an interest by reason of his former employment with Inland, but they are not involved on this appeal.

When Inland rejected his claims Burke instituted a declaratory judgment action in the circuit court. The circuit court entered a declaration of rights in which Burke was adjudged entitled to the disability pension from Inland and also entitled to the severance pay allowance. Although Inland appeals from the entire judgment, the only issue presented in its (appellant's) brief is whether Burke was "totally and permanently disabled" at the time Inland's pension plan coverage terminated. Therefore, since this stated issue only controls Burke's right to the disability pension payments, the remaining portions of the declaration of rights must stand affirmed. We conclude that Burke is not entitled to the disability pension from Inland, and we reverse that portion of the circuit court's judgment.

Inland's company-paid pension plan, under which Burke became covered when he

was employed in 1943, provided for monthly pension benefits to specific employees in a specified condition. These benefits were payable to an employee who had completed 15 or more years of continuous service and "who had become totally and permanently disabled." Total and permanent disability was explicitly defined in the plan as that condition produced by an unavoidable cause which thereby prevented the eligible employee from engaging in any occupation for remuneration or profit. The plan stated that this coverage terminated as of the end of the month in which employment was terminated. All employees of the operation in which Burke was employed were terminated in Inland's employment on January 31, 1966. Burke had been in Inland's employment for more than 15 years continuously. He was, therefore, an eligible employee whose coverage ended in January 1966 unless he was totally and permanently disabled at that time. We conclude that the total evidence clearly demonstrated that he was not occupationally disabled at the time Inland's coverage terminated.

Burke worked full time for Inland until the sale of the business to Island Creek. Neither before nor at the time of the termination of his Inland employment did he make any claim of disability. After his employment by Island Creek, he worked regularly and even put in considerable overtime until July 15, 1966. The medical evidence, consisting of the testimony of private physicians consulted by Burke, was that Burke is capable of working as a bookkeeper, although he would have to observe some restrictions in his work activity. This evidence also showed that he was more able to work on a relatively unrestricted basis in January 1966 than is now desirable. There is no suggestion that his work would endanger his life or cause him real discomfort.

It is undisputed that Burke drew full salary from Island Creek for one month after he left work for that firm in July 1966, and he was paid half salary for the next two months apparently under sick leave provisions. More significantly, it was also proved that, under Island Creek's disability pension plan for its employees, Burke was paid $50 per week for 52 weeks, or a total of $2,600; the last periodic payment of these benefits was made in October, 1967. When Burke made demand upon Inland, he asserted in his letter of request for payment to that firm that his disability commenced on July 15, 1966.— six months after Inland's coverage had terminated.

It is well established that one who claims benefits under an employee group insurance policy containing a disability clause has the burden to prove that the employee insured thereunder was, at the time the loss occurred, covered by the policy. Cf. Prudential Ins. Co. of America v. Howard's Assignee, 258 Ky. 366, 80 S.W.2d 21 (1935). The same principle applies with equal force to a contractual pension plan that includes benefits for disability.

In the employee disability insurance field, it has been recognized that the mere fact that an insured employee follows his usual occupation for a limited time after coverage termination will not alone preclude his recovery under a disability clause in the policy where the issue is whether total and permanent disability existed at the time coverage under it was terminated; nevertheless, continued performance of work by the employee is significant, and if the previously insured employee has a subsequent substantial work record, the degree of significance is enhanced. See 68 ALR 2d, Anno: Group Policy—Termination—time, Sec. 36, 199.

In Burke's case, the following considerations emerge from the total evidence: (a) There is no factual support for any supposition that he was actually occupationally disabled or worked at risk of life or worked from economic necessity despite substantial pain or discomfort while he was employed by Inland; (b) there is no evidence that he has ever been totally occupationally disabled as that status is ordi-

narily understood; (c) if it be assumed that he was rendered "totally and permanently disabled" by his physical condition, that disability became an operative liability under Island Creek's contractual coverage according to Burke's own assertions, which were successful and by reason of which he was compensated. Burke simply failed to discharge the burden to prove that Inland was liable to him. His claim for what amounted to an additional disability pension to the one that he received from Island Creek should have been dismissed. Hence, it is unnecessary to explore the refinements of "occupational" as contrasted with "non-occupational" disability coverage, nor need we consider the question of what constitutes "permanent and total disability" when heart disease in the form present here is the causative agent of the physical condition.

The circuit court is directed to enter a new declaratory judgment in which all of the provisions of the prior judgment are incorporated except it will be adjudged that Burke is not entitled to a disability pension from Inland.

The judgment appealed from is affirmed in part and reversed in part, with directions to enter a new judgment in accordance with this opinion.